Kelly Brown, Angel, J.
Plaintiff Merchants Preferred Insurance Company (“Merchants”) commenced this action for rescission, pursuant to M.G.L.c. 175, §186, based upon an alleged material misrepresentation made by Costas Konstantinopoulos (“Konstantinopoulos”) in his insurance application and it seeks a declaration that it does not have a duty to indemnify Konstantinopoulos due to the material misrepresentation. Defendant Marcio Celestino’s (“Celestino”) counterclaim seeks a 1) declaratory judgment that Merchants has a duty to indemnify Konstantinopoulos in the tort action; and 2) treble damages, attorneys fees for violation of G.L.c. 176D[3] and 93A. Intervener Hartford Underwriters Insurance Company likewise seeks declaratory judgment and dismissal of the rescission action.
A jury-waived trial commenced May 19, 2014 and continued over the course of three days, at which a total of seven witnesses testified and 15 exhibits were admitted into evidence. Based on all the credible evidence, drawing such fair inferences as this Court finds to be reasonable, and resolving questions of credibility where they occur, this Court finds the following material facts.
FINDINGS OF FACT
In addition to accepting the undisputed facts, the Court makes the following additional findings of fact pertinent to its rulings of law.
Defendant Costas Konstantinopoulos (“Konstantinopoulos”) met with Christopher Russo (“Russo") of Russo Insurance Agency, an experienced agent for Plaintiff Merchants Preferred Insurance Company (“Merchants”) on or about May 8, 2009 to apply for workers’ compensation and general liability insurance and on that date, received a certificate of insurance, naming Merchants as the insurer. However, Russo electronically submitted the insurance application to Merchants on May 25, 2009 and the policy was issued and effective on this date. The precise conversation between the Konstantinopoulos and Russo is unclear, which the Court attributes to the passage of time. The application submitted to Merchants was riddled with untrue statements,[4] without any explanation. Nor is there an explanation for the delay in electronically submitting the application. The application was unsigned. There is no proof or suggestion that Konstantinopoulos reviewed the error-filled application prior to its submission.
Merchants’ claim for rescission is based upon the facts that Russo is an experienced insurance agent, a member of Merchants’ Advisory Council, and as such Russo knew he did not have the authority to issue a policy with Merchants, if Konstantinopoulos truthfully reported his work was primarily as a general contractor and he utilized subcontractors on the majority of his work. Merchants does not issue insurance policies for contractors who hire subcontractors for more than 25% of their work. Russo only had authority to issue a policy to contractors who subcontract up to 10% of their work. According to standard operations, Merchants reserves the right to review and refuse applicants who utilize subcontractors for 11-25% of their work.
The Court credits Konstantinopoulos’ testimony that he informed Russo that he was starting a new business and because of the then-existing nature of *311 the housing market, he was uncertain of the type and scope of work he would be engaged in. Konstantinopoulos had experience in new home constructions and remodeling work. Supporting his testimony is the fact that the workers’ compensation application states it was a new business. The Court finds that prior to his meeting with Russo, Konstantinopoulos worked as a general contractor, primarily using subcontractors before the dissolution of New England Classic Homes and his use of subcontractors continued after this meeting when he was doing business as New England Classic Construction. Due to the number of unexplained false entries in the general liability insurance application, the Court is unable to find that it is more likely than not true that Konstantinopoulos stated he would only subcontract out 10% of the work. The policy did not preclude all subcontracting of work. The fact that Konstantinopoulos continued to hire subcontractors for on-going proj ects or new projects in the Fall of2009 is not sufficient evidence for the Court to conclude he intentionally made a misrepresentation about the percentage of his work that would be subbed out. Nor is the Court able to conclude that Konstantinopoulos made a misrepresentation about the number of years he has operated his business. In fact, there is evidence to the contrary; it is an undisputed fact that the application for workers’ compensation insurance states New England Classic Construction was a new business. The Merchants policy requires a minimum of three years of business operations. There was no explanation or suggestion how that information was entered into the application.
Based upon the credible evidence, the Court is unable to conclude that Konstantinopoulos made an expressed misrepresentation. The percentage of work to be subbed out would indeed be a material representation, because Merchants would not have issued a policy if it knew that Konstantinopoulos would subcontract out more than 25% of his work. The Court does not find that Konstantinopoulos made truthful statements during the application process with Russo, because of inconclusive evidence. Additionally, the Court cannot conclude based upon a preponderance of the credible evidence that Konstantinopoulos did make material misrepresentations when applying for insurance. It is equally likely, if not more likely that incorrect information was recorded into the application by Russo between May 8th meeting and May 25th application submission date. It was conclusively proven that Russo did not maintain his records in accordance with Merchants’ standards that require the retention of signed insurance applications. Russo does not possess a signed insurance application, as required by Merchants.
Konstantinopoulos’ understanding that any change in the nature of his future work could be changed later is plausible, specifically the change would be captured in the audit and appropriate adjustments would be made to his premium at that time. It is plausible because Russo testified that this conversation about adjustments at the time of audit did take place in connection with his workers’ compensation application, not the general liability policy. Konstantinopoulos’ misunderstanding by conflating the two applications is not evidence of an intentional misrepresentation.
Because the Court finds against plaintiff in the rescission action, the Court declines to discuss the defenses of estoppel, waiver and others.
Judgment shall enter in favor of the defendants[5] in plaintiffs Complaint and Defendants’ counterclaim for declaratory judgment.
COUNTERCLAIM
Now turning to defendant Celestino’s counterclaim in Count 2, he asserts a failure to handle the claim in a fair and reasonable manner pursuant to G.L.c. 176D(3)(9) and G.L.c. 93A. Plaintiff-in-counterclaim, Celestino, alleges Merchants had a duty to handle claims in a fair and reasonable manner and to timely inform Konstantinopoulos of the denial of coverage or to inform Celestino’s attorney of its intention to deny coverage; and as a consequence, Celestino agreed to limit his right to enforce any judgment against Konstantinopoulos to the limits of the policy. More specifically identified in his trial memorandum, Celestino alleges that Merchants engaged in bad faith practices as it failed to affirm or deny coverage within a reasonable time in violation of G.L.c. 176D, §3(9)(e). Celestino seeks attorneys fees and any other relief that this court may deem just.
On February 23, 2010, Celestino filed a lawsuit against Konstantinopoulos, alleging Konstantinopoulos acted as a general contractor and his negligence caused Celestino’s injuries on December 1, 2009. A few weeks earlier, Konstantinopoulos filed for Chapter 13 bankruptcy. Susan Lambert is an experienced claims representative employed by Merchants, working and residing in New Hampshire, who was handling Celestino’s claim. In April 2010 it was brought to Lambert’s attention that Merchants’ insured Konstantinopoulos was acting as a general contractor. Lambert tried to contact Konstantinopoulos several times over the following months. On April 13, 2010, Lambert ultimately sent a reservation of rights letter (“ROR”) informing him of his duty to cooperate with the insurer. During the summer of 2010, Merchants’ Special Investigation Unit (“SIU”) conducted an investigation to determine whether Konstantinopoulos made a material misrepresentation on his insurance application about the percentage of work he subcontracted. On September 24, 2010, Merchant’s SIU concluded Kontstantinopoulos “may have been acting as a general contractor outside of the scope of the coverage afforded by his MIG policy.” Lambert reviewed the investigation report, but did not *312 automatically accept SIU’s conclusion as accurate. Because she never received a response to her calls or letter from Konstantinopoulos, she sought the assistance of counsel in October 2010. Lambert asked counsel to assist her in obtaining information, including a statement under oath. It was not until late summer of 2011 that Konstantinopoulos provided any information.
During this same time period, on October 19, 2010, counsel for Celestino contacted Lambert asking her to confirm “whether there are any other ROR letters issued” other than the April 13, 2010 letter. Lambert responded promptly stating “this is the only ROR to date.” She limited her response to exactly what was asked of her. Lambert did not offer any additional information and specifically she did not mention the ongoing investigation, despite having knowledge that SIU had already concluded Konstantinopoulos may have worked as a general contractor and possibly made a misrepresentation on his application. By late 2011, early 2012, Merchants decided to commence this rescission action.
Lambert knew Konstantipoulos filed for bankruptcy. She was unfamiliar with the bankruptcy laws in Massachusetts. Lambert sought the assistance of legal counsel from Merchants in October of 2010, around the same time that Celestino’s attorney made inquiry about any letters reserving the rights of Merchants to deny coverage. In order for Celestino to proceed with a tort action against Konstantinopoulos, he was required to petition the bankruptcy court for relief from the stay. In order for the tort action to not affect the bankruptcy estate, Celestino was required to agree not to seek assets from the estate to satisfy any judgment and to rely upon the Merchants insurance policy only to satisfy a judgment. Lambert may not have been aware of the significance of the bankruptcy action. However, she was aware that Celestino had an interest in the outcome of Merchants’ decision to deny coverage. Lambert also possessed information to support a denial of coverage and she had available the advice of counsel to respond to Celestino’s request for information. On November 23, 2010, Celestino entered into a stipulation with Konstantinopoulos’ bankruptcy attorney waiving his rights to any claims against Konstantinopoulos’ bankruptcy estate, in order to pursue an award in state court limited to the Merchants’ policy. The Court finds Merchants failed to act timely in denying coverage and Celestino was harmed by that decision, in that he waived his right to pursue a claim against Konstantinopoulos’ bankruptcy estate. During the nearly two-year period from the filing of Celestino’s tort action in February 2010 until Merchants’ filing of this rescission action in January 2012, or approximately year and a half after the conclusion of the SIU investigation, at no time did Merchants inform Celestino that it intended to file a rescission action to deny coverage under Konstantinopoulos’ policy. The Court does find a violation of Massachusetts Unfair Claims Handling Act, G.L.c. 176D(3){9) for failing to handle the claim in a fair and reasonable manner.
Judgment shall enter in favor of defendant/plaintiff-in-counterclaim Celestino and an award of attorneys fees is granted.
ORDER FOR JUDGMENT
For the foregoing reasons, it is hereby ORDERED judgment enter in favor of defendants Hartford and Celestino. Further it is ORDERED judgment enter in favor of defendant Celestino, plaintiff-in-counterclaim for an award of attorneys fees.
It is hereby DECLARED Merchants has a duty to indemnify Konstantinopoulos in connection with the Celestino lawsuit pending in this Court, Civil Action Number 10-00345.

After conferencing this claim with the attorneys, they stipulate that the 176D claim was correctly tried during the jury-waived trial and the prior order by J. Garsh bifurcating the claims was an error. The parties never sought bifurcation and agreed to try the entire case at once, to which these findings and rulings apply.

The general liability insurance application states New England Classic Construction had been in business for five years, 15 jobs in the lastyear and identified previous insurers.

Celestino’s counterclaim has two counts.